The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: April 11 2018

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-32367 |
| | ) | |
| Marilee Hockenberger, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION REGARDING DETERMINATION
UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002.1(h)**

The court held an evidentiary hearing on Creditor U.S. Bank Trust National Association's Response to Notice of Final Cure Payment ("Response") and Debtor's reply [Doc. # 82], which the court construes as a motion brought under Rule 3002.1(h) of the Federal Rules of Bankruptcy Procedure. Debtor's counsel and counsel for U.S. Bank Trust National Association ("U.S. Bank") appeared at the hearing in person. While U.S. Bank agrees that Debtor has paid the amount required to cure the prepetition mortgage arrearage included in the proof of claim filed by Debtor on its behalf, it contends that Debtor is not current on required postpetition payments and owes a postpetition arrearage in the amount of $61,445.21. Debtor disputes this amount.

This memorandum of decision constitutes the court's findings of fact and conclusions of law under to Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 9014 and 7052. Regardless of whether or not specifically referred to in this decision, the court has examined the submitted

materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the following reasons, the court finds that Debtor has paid in full the amount required to cure the prepetition mortgage arrearage but that she has not paid all amounts required postpetition and owes a postpetition arrearage in the total amount of $38,658.85.

## **FACTUAL BACKGROUND**

Debtor filed her Chapter 13 petition on May 21, 2012. Her Chapter 13 plan was confirmed on September 28, 2012. CitiMortgage, Inc. was the holder of a Note secured by a mortgage on Debtor's residence located at 3777 Treelawn Drive, Toledo, Ohio. [*See* Cr. Ex. 1, unnumbered p. 5; Cr. Ex. 2]. In her Chapter 13 plan, Debtor estimated that she owed CitiMortgage an arrearage in the amount of $15,000.00. [Doc. # 8, ¶ 4]. Her plan provides that the Trustee shall pay monthly the allowed claim for such arrearages over the course of Debtor's sixty-month plan and that Debtor shall pay all postpetition mortgage payments directly to CitiMortgage as they become due. [*Id.*].

CitiMortgage did not file a proof of claim in this case. Thus, on January 23, 2013, Debtor filed a proof of claim on its behalf asserting a secured claim in the amount of $174,941.68, which included an arrearage in the amount of $15,000.00. [Claim No. 5-1]. No objection to the claim was filed, nor was the claim amended. CitiMortgage, Inc. eventually transferred the claim to U.S. Bank as Trustee.[1] [Doc. # 78].

On May 24, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment pursuant to Rule 3002.1(f) of the Federal Rules of Bankruptcy Procedure ("Notice") stating that Debtor paid the entire allowed prepetition arrearage as required under the confirmed Plan with respect to U.S. Bank's mortgage loan secured by Debtor's residence. [Doc. # 80]. U.S. Bank's Response to the Notice indicates agrees that the amount required to cure the prepetition mortgage arrearage has been paid in full but states that Debtor is not current on all postpetition payments, including fees, charges, escrow and costs, and that the unpaid postpetition amount due on June 21, 2017, is $62,445.21, less $1,510.07 held in suspense, [*see* Response to Notice of Final Cure Payment, p. 6], for a total of $61,445.21, [*id.* at 1]. Debtor disputes the amount U.S. Bank claims is owed as a postpetition mortgage arrearage and argues that all required post-petition mortgage payments have been made.

---

[1] The Note Allonge evidencing the transfer shows a transfer from CitiMortgage, Inc., to U.S. Bank as Trustee for Stanwich Mortgage Loan Trust, Series 2012-4. [Cr. Ex. 1, unnumbered p. 6]. The Transfer of Claim Other than for Security filed with the court states that the transferee is U.S. Bank Trust National Association as Trustee of the IGSC Series II Trust, [Doc. # 78, p. 1], and the Notice of Transfer of Claim other than for Security states that the transferee is U.S. Bank Trust National Association, as Trustee of the Preston Ridge Partners Investments II Trust, [*id.* at unnumbered p. 6]. As no party raised the issue at the hearing, the court will simply assume that U.S. Bank as trustee of a trust is the current holder of the Note.

2

The original Note secured by Debtor's residence is in the amount of $136,000.00 at 11.25 percent interest and is dated February 8, 2000. [Cr. Ex. 1]. In 2006, Debtor entered into a Loan Modification Agreement with CitiFinancial Mortgage Company[2] that reduced the interest rate to eight percent and sets forth a required monthly principal and interest payment in the amount of $1,315.16. [Cr. Ex. 3, ¶¶ 5, 6]. In addition, the Loan Modification Agreement requires monthly escrow payments for property taxes and insurance, which amount is to be estimated by "Lender." [*Id.* at ¶ 17(B)]. The Loan Modification Agreement provides that if there is a shortage or a deficiency of funds held in escrow, "Lender shall notify Borrower as required by [the Real Estate Settlement Procedures Act ("RESPA")], and Borrower shall pay to Lender the amount necessary to make up the shortage [or deficiency] in accordance with RESPA, but in no more that 12 monthly payments." [*Id.*]. The Loan Modification Agreement was also signed by Debtor's husband, Fred Hockenberger ("Hockenberger").

As of May 2017, SN Servicing has been the servicer for U.S. Bank. Joni Yorks, a representative of SN Servicing, testified at the hearing. According to Yorks, SN Servicing's actual first-hand knowledge regarding Debtor's mortgage payments only relates to payments received between May 2017 and December 2017, during which payments were made every month in the total amount of $711.20. Nevertheless, she testified regarding what she described as a summary of Debtor's mortgage payment history since May 21, 2012, through May 31, 2017. [Cr. Ex. 5]. Yorks testified that the summary was prepared for this dispute and is based on records obtained by SN Servicing from a prior servicing agent "when U.S. Bank got the loan." The court, however, places little weight on this exhibit and finds it less than helpful in determining an amount owed due to postpetition arrearages.

The Exhibit 5 record begins on May 21, 2012, and sets forth a negative escrow balance in the amount of $13,102.26. [Cr. Ex. 5, p. 1]. This amount largely coincides with the $15,000.00 estimated mortgage arrearage set forth in Debtor's Plan and in the proof of claim filed by her on behalf of CitiMortgage. Although U.S. Bank does not dispute that the prepetition arrearage has been paid in full, Exhibit 5 shows a final escrow balance owed that includes the $13,102.26 owed on the date of filing. [*Id.* at unnumbered p. 5]. And while Yorks testified that all payments received are accounted for in this exhibit, the exhibit itself states that there is a "[g]ap in history from 06/15/12/thru 01/01/2013." [*Id.* at 1]. The entries in Exhibit 5 were not otherwise explained, and the court lacks any basis for finding the exhibit to be an accurate summary of postpetition amounts owed by Debtor.

---

[2] CitiFinancial Mortgage Company later transferred the Note to CitiMortgage, Inc. [*See* Cr. Ex. 1, unnumbered p. 5].

The record is silent as to the monthly payment that includes the escrow amount required under the Loan Modification Agreement on May 21, 2012, the date Debtor filed her petition. However, on August 25, 2016, U.S. Bank filed and served its first Notice of Mortgage Payment Change effective October 22, 2016. [Cr. Ex. 6]. The Annual Escrow Account Disclosure Statement attached thereto indicates that the total monthly payment as of October 2015 was $1,745.64, which includes principal and interest of $1,315.16 plus a $430.48 escrow payment, and that the new monthly payment effective October 22, 2016, was $1,731.08, which includes principal and interest of $1,315.16 plus a $415.92 escrow payment. [*Id.*].

Nevertheless, at the hearing, Hockenberger testified regarding discussions relating to a mortgage loan modification for which he and his wife applied in 2009, testimony that the court finds credible. He testified CitiMortagage lowered their interest rate for two months to 4.99 percent effective March 30 through May 31, 2009, and their monthly payment to $576.53 for two months. [Debtor Ex. A]. In June 2009, Hockenberger received a telephone call from CitiMortgage and was informed that the monthly payment was changed to $619.59, which Debtor then paid. Hockenberger was then told not to make any more payments until CitiMortgage contacted them again. In September 2009, CitiMortgage called and informed him that the monthly payment henceforth would be $711.20. He testified, and U.S. Bank does not dispute, that Debtor has sent a payment in the amount of $711.20 each and every month since September 2009. He further testified that CitiMortgage never sent a loan modification agreement for Debtor to sign in 2009. According to Hockenberger, because CitiMortgage was doing so many loan modifications, when he "pressed them" regarding a written agreement, he was told "this is it."

The Chapter 13 Trustee filed her Final Report and Account on August 7, 2017. [Doc. # 90]. It shows that Debtor completed her plan on April 20, 2017. [*Id.*, p. 1/2]. The court entered Debtor's Chapter 13 discharge on September 9, 2017. [Doc. # 100].

## LAW AND ANALYSIS

The provisions of Rule 3002.1 of the Federal Rules of Bankruptcy Procedure apply in a Chapter 13 case to claims "(1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). Pursuant to § 1325(b)(5) of the Bankruptcy Code, Debtor's Chapter 13 plan provided for the curing of any prepetition default and maintenance of payments with respect to U.S. Bank's claim, which is secured by a mortgage on her residence. *See* 11 U.S.C. § 1325(b)(5). The "cure and maintain" provisions of Debtor's plan thus make Rule 3002.1 applicable in this case.

Pursuant to Rule 3002.1, after the debtor completes all payments under the plan, the Chapter 13 trustee must "file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim." Fed. R. Bankr. P. 3002.1(f). The holder of the secured claim must then "file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." Fed. R. Bankr. P. 3002.1(g). The rule provides that the required statement shall be filed as a supplement to the holder's proof of claim but that it is not afforded the same prima facie presumption of validity as the original claim under Rule 3001(f). Id. On motion of the debtor or trustee, "the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts." Fed. R. Bankr. P. 3002.1(h).

Rule 3002.1 does not expressly address the burden of proof under subsection (h). However, courts addressing the issue, including this court, have concluded that the mortgage holder has the burden to establish outstanding postpetition obligations on the mortgage. *See, e.g., In re Ferrell,* 580 B.R. 181, 185 (Bankr. D.S.C. 2017) (stating that mortgage holder was required to appear and establish the alleged postpetition defaults set forth in its Rule 3002.1(g) response); *In re Kreidler*, 494 B.R. 201, 204 (Bankr. M.D. Pa. 2013) (same); *In re Rodriguez*, No. 08-80025-G3-13, 2013 WL 3430872, *4 , 2013 Bankr. LEXIS 2738, *11 (Bankr. S.D. Tex. July 8, 2013)("The court infers from the absence of a presumption of prima facie validity that the claimant bears the burden of proof under Bankruptcy Rule 3002.1(h)."); *In re Howard*, No. 10-52527, 2016 WL 8222335, *3, 2016 Bankr. LEXIS 4567, *6-7 (Bankr. N.D. Cal. Aug. 15, 2016) (same); *In re Brown*, No. 11-36333, *2 (Bankr. N.D. Ohio Mar. 2, 2017).

In this case, there is no dispute that Debtor has paid in full the amount required to cure the prepetition default.[3] And there is no dispute that Debtor has made mortgage payments every month since 2009 in the amount of $711.20. However, U.S. Bank contends that even before any escrow payment, Debtor's required monthly principal and interest payment is $1,315.16 and states that Debtor owes $62,445.21, less $1,510.07 held in suspense, for a total of $61,445.21 in postpetition arrearages.

Notwithstanding the fact that Debtor has made monthly payments of $711.20 every month since

---

[3] Although, as discussed below, Debtor's prepetition payments were less than the required principal and interest payment, there was no objection to the proof of claim filed by Debtor on behalf of CitiMortgage, U.S. Bank's predecessor, and no objection was filed to the prepetition arrearage to be paid pursuant to Debtor's Chapter 13 plan. A properly filed claim is prima facie evidence of the validity and amount of the creditor's claim and is deemed allowed unless an objection is filed. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). And "[t]he provisions of a confirmed plan bind the debtor and each creditor . . . whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

2009, Debtor filed a proof of claim on behalf of U.S. Bank that includes a prepetition arrearage in the amount of $15,000.00, which Debtor's counsel represented to the court constitutes Debtor's estimate of the prepetition escrow deficiency. It is thus clear, and the court finds, that Debtor was aware, at least at the time of filing her bankruptcy petition, that the $711.20 monthly payment did not include any escrow payment.

Nevertheless, Debtor disputes the amount of any postpetition arrearage claimed by U.S. Bank. She argues that U.S. Bank is estopped from claiming that the monthly payment is more than $711.20 since (1) that is the amount that, in 2009, its predecessor instructed would be the new monthly payment amount, (2) that is the amount Debtor has paid each and every month since September 2009, and (3) throughout that time, the Note and mortgage holders, including U.S. Bank, have accepted that payment without objection, at least until the first Notice of Mortgage Payment Change was filed on August 25, 2016, over four years after commencement of this case. Debtor argues that escrow payments are the only amounts that may have accrued during this Chapter 13 bankruptcy. U.S. Bank counters that the statute of frauds precludes consideration of any oral agreement to reduce the amount of Debtor's monthly mortgage payment.

Given Debtor's knowledge at the time of filing that her monthly payment did not include the required escrow payment, on this evidence alone it is clear, and the court finds under Rule 3002.1(h), that she has not paid all amounts required postpetition. The court thus considers Debtor's estoppel argument only with respect to the amount of the asserted postpetition arrearage and only to the extent it relates to the proper amount of unpaid principal and interest included in U.S. Bank's calculation of the asserted postpetition arrearage.

**A. Statute of Frauds and Promissory Estoppel**

The mortgage provides that it is governed by federal law and the law of the jurisdiction in which the mortgaged property is located, [Cr. Ex. 2, p. 4/8, ¶ 15], which is Ohio.

Ohio's statute of frauds provides:

> No action shall be brought whereby to charge . . .a person upon an agreement. . . that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

Ohio Rev. Code § 1335.05. "[O]ral agreements that pertain to matters covered by the state of frauds cannot be enforced as either a claim or a defense." *FirstMerit Bank, N.A. v. Inks*, 138 Ohio St. 3d 384, 388, 2014-Ohio-789, ¶ 20 (2014).

An oral agreement that does not specify the actual number of payments to be made but does provide

6

for a periodic payment in an amount that would necessarily require more than a year to pay the entire obligation is subject to the writing requirement of § 1335.05. *Sherman v. Haines*, 73 Ohio St. 3d 125, 127 (1995). To the extent an oral agreement to reduce Debtor's monthly mortgage payment to $711.20 exists, it constitutes such an agreement as it would have required more than a year to pay her entire obligation. Because such an agreement does not comply with the statute of frauds, it is unenforceable. *Olympic Holding Co. v. ACE, Ltd.,* 122 Ohio St. 3d 89, 94, 2009-Ohio-2057, ¶ 29 (2009).

Nevertheless, Debtor advances a promissory estoppel argument in contending that U.S. Bank should be estopped from claiming that the monthly payment is more than $711.20 since monthly payments in that amount have been accepted by it and its predecessor, CitiMortgage, since September 2009. "The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Id.* In *Olympic Holding Co.,* the Ohio Supreme Court recognized that numerous jurisdictions have held that promissory estoppel may be used to remove an agreement from having to comply with the statute of frauds but declined to adopt that exception. *Id.* The Court explained:

> Courts have long recognized that a signed contract constitutes a party's final expression of its agreement. Thus, the statute of frauds is necessary because a "signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs."
>
> If promissory estoppel is used as a bar to the writing requirements imposed by the statute of frauds, . . . the predictability that the statute of frauds brings to contract formation would be eroded. Parties negotiating a contract would no longer know what signifies a final agreement. Promissory estoppel used this way would open contract negotiations to fraud, the very evil that the statute of frauds seeks to prevent. Thus, "[t]o allow [a] plaintiff to recover on a theory of promissory estoppel where the oral contract is precluded by the Statute of Frauds, ' "would abrogate the purpose and intent of the legislature in enacting the statute of frauds and would nullify its fundamental requirements." ' "

*Id.* at 95 (citations omitted).

The Ohio Supreme Court thus held that "[a] party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract must be in writing and signed by the party to be charged, but may pursue promissory estoppel as a separate remedy for damages." *Id.* at 96. Debtor has not asserted a separate claim for damages.

Debtor's argument that the principle of promissory estoppel means that she was required to make monthly mortgage payments of only $711.20 during this Chapter 13 case is unavailing under Ohio law.

7

**B. Debtor's Postpetition Arrearage**

1. <u>Principal and Interest Payments</u>

U.S. Bank has asserted in its Response filed pursuant to Rule 3002.1(g) that, as of June 21, 2017, Debtor owes a postpetition mortgage arrearage in the amount of $$62,955,28, less $1,510.07 held in a suspense account, for a total amount owed in the amount of $61,445.21. However, statements filed pursuant to Rule 3002.1(g) "have no prima facie evidentiary effect and no presumptive validity." *Bodrick v. Chase Home Fin., Inc. (In re Bodrick),* 498 B.R. 793, 803 (Bankr. N.D. Ohio 2013); Fed. R. Bankr. P. 3002.1(g). It was thus incumbent upon U.S. Bank to prove by a preponderance of the amount of the postpetition arrearage it claims Debtor owes.

The record is silent as to how U.S. Bank calculated the asserted postpetition arrearage. And as discussed above, the court has no basis for finding entries in U.S. Bank's Exhibit 5 to be reliable and does not find it to be an accurate summary of postpetition amounts owed by Debtor. Moreover, after poring over that exhibit, nothing in it shows the arrearage asserted by U.S. Bank.

Nevertheless, the 2006 Loan Modification Agreement, [Cr. Ex. 3], which is the only written agreement modifying Debtor's original mortgage note and is the controlling agreement in this case, clearly requires a monthly principal and interest payment of $1,315.16. It is undisputed that Debtor made direct mortgage payments of only $711.20 per month throughout the relevant time period, a difference of $603.96 per month from the principal and interest payment required. Thus between May 21, 2012, the date Debtor filed her petition, and June 21, 2017, the date of U.S. Bank's Response, a period of sixty-one months, a principal and interest arrearage accrued in the amount of $36,841.56 (61 x $603.96).

2. <u>Escrow Payments</u>

The Loan Modification Agreement also requires Debtor's monthly payments to include an escrow payment, which they did not. As discussed above, the Loan Modification Agreement requires "Lender" to estimate the amount of the escrow payment due and inform the borrower of the amount it requires her to pay. However, there is no evidence regarding what amount Debtor was actually informed to pay as a monthly escrow payment until U.S. Bank filed a Notice of Mortgage Payment Change on August 25, 2016, [Cr. Ex. 6], which informed Debtor that the monthly escrow payment would be $415.92, effective October 22, 2016. While that notice also includes information regarding a monthly escrow amount that would have been due as of October 2015, the record is silent as to whether Debtor was ever informed of that amount. And to the extent that the escrow amount was changed as of October 2015, no notice of payment change was ever filed as required by Rule 3002.1. *See* Fed. R. Bankr. P. 3002.1(b) (requiring the holder of the

8

claim to file and serve on the debtor and debtor's counsel "a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due."). While Debtor was clearly required to make monthly escrow payments prior to October 22, 2016, U.S. Bank has not met its burden of proving what escrow payment amount it required of Debtor before that date and the court will not speculate as to such amount.

As indicated above, the Notice of Mortgage Payment Change filed and served on August 25, 2016, [Cr. Ex. 6], required Debtor to make a monthly escrow payment of $415.92, effective October 22, 2016. Thus, the amount owed by Debtor for escrow payments during the eight month period beginning October 22, 2016, through June 21, 2017, the date of U.S. Bank's Response, totals $3,327.36 (8 mos. x $415.92).[4]

In summary, U.S. Bank has proven by a preponderance of the evidence a postpetition arrearage owed by Debtor as of June 21, 2017, in the total amount of $38,658.85, which includes principal and interest in the amount of $36,841.56 and unpaid escrow in the amount of $3,327.36, less $1,510.07 held in a suspense account by U.S. Bank.

The court will enter a separate order in accordance with this memorandum of decision.

### 

---

[4] U.S. Bank's Response sets forth a claimed amount owed as a postpetition arrearage as of June 21, 2017. The court thus considers only payments in arrears as of that date. Although U.S. Bank filed a second Notice of Mortgage Payment Change on August 16, 2017, that decreased Debtor's required monthly escrow payment to $395.74, effective October 22, 2017, [Cr. Ex. 4], the court need not address that adjusted payment.

9

12-32367-maw    Doc 125    FILED 04/11/18    ENTERED 04/11/18 11:59:56    Page 9 of 9